Elizabeth P. Hodes, AK Bar No. 0511108
DAVIS WRIGHT TREMAINE LLP
188 West Northern Lights Blvd., Suite 1100
Anchorage, AK 99503
Phone:  (907) 257-5300
elizabethhodes@dwt.com

Leslie C. Murphy (To Be Admitted *Pro Hac Vice*)
Elizabeth K. Key (To Be Admitted *Pro Hac Vice*)
Mark A. Anishchenko (To Be Admitted *Pro Hac Vice*)
DAVIS WRIGHT TREMAINE LLP
621 Capitol Mall, Suite 1950
Sacramento, CA 95814
Phone: (916) 396-5836
lesliemurphy@dwt.com
elizabethkey@dwt.com
markanishchenko@dwt.com

*Attorneys for Plaintiff*
Galen Hospital Alaska, Inc. dba
Alaska Regional Hospital

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| GALEN HOSPITAL ALASKA, INC. dba ALASKA REGIONAL HOSPITAL, <br><br> Plaintiff, <br><br> vs. <br><br> PREMERAFIRST, INC. and PREMERA BLUE CROSS, <br><br> Defendants. | Case No. _____ <br><br><br> **COMPLAINT FOR BREACH OF CONTRACT, BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING, AND UNJUST ENRICHMENT** |

Original Complaint
*Galen Hospital Alaska Inc. dba Alaska Regional Hospital v. PremeraFirst, Inc. et al.,*
Case No. _____
Page 1 of 27

Case 3:25-cv-00197-SLG     Document 1     Filed 09/10/25     Page 1 of 27

## PLAINTIFF'S ORIGINAL COMPLAINT

Plaintiff Galen Hospital Alaska, Inc. dba Alaska Regional Hospital brings this action against Defendants PremeraFirst, Inc. and Premera Blue Cross for breach of contract, breach of the implied covenant of good faith and fair dealing, and unjust enrichment arising out of Premera's failure to pay the hospital in accordance with the terms of the parties' written contract for healthcare services.

## PARTIES

1.      Galen Hospital Alaska, Inc. is a corporation organized and existing under the laws of the State of Delaware, licensed to conduct business in Alaska, with its principal place of business in Nashville, Tennessee.

2.      Galen Hospital Alaska, Inc. owns and operates a hospital located in Anchorage, Alaska doing business as Alaska Regional Hospital ("ARH"). For purposes of this Complaint, Galen Hospital Alaska, Inc. and ARH are collectively referred to as "Hospital."

3.      PremeraFirst, Inc. is a corporation organized and existing under the laws of the State of Washington with its principal place of business in Seattle, Washington.

4.      Premera Blue Cross is a nonprofit corporation organized and existing under the laws of the State of Washington with its principal place of business in Mountlake Terrace, Washington, doing business as Premera Blue Cross Blue Shield of Alaska. Premera Blue Cross is a licensee of the Blue Cross and Blue Shield Association and is

Original Complaint
*Galen Hospital Alaska Inc. dba Alaska Regional Hospital v. PremeraFirst, Inc. et al.,*
Case No. _____
Page 2 of 27

Case 3:25-cv-00197-SLG      Document 1      Filed 09/10/25      Page 2 of 27

licensed to offer Blue Cross and Blue Shield branded health insurance plans in the State of Alaska.

5.      PremeraFirst, Inc. acted as a disclosed agent and intermediary for Premera Blue Cross, entering into contracts with healthcare providers on Premera Blue Cross's behalf, including the contract at issue.  For purposes of this Complaint, PremeraFirst, Inc. and Premera Blue Cross are collectively referred to as "Premera."

## JURISDICTION AND VENUE

6.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a) because the parties are diverse and the amount in controversy exceeds $75,000, exclusive of interest and costs.

7.      This Court has personal jurisdiction over Premera because Premera conducts substantial business in Alaska, and a substantial part of the events or omissions giving rise to Hospital's claims occurred within this judicial district.  Premera insures and administers health plans and health insurance policies that cover Alaska residents, including each of the members who Hospital treated in this case.  Premera therefore does business in the State of Alaska for purposes of this Court's exercise of personal jurisdiction over it.

8.      Venue is proper in the District of Alaska pursuant to 28 U.S.C § 1391(b)(2) because a substantial part of the events or omissions giving rise to Hospital's claims occurred in this judicial district.  Hospital is located in this judicial district, and provided the care at issue in this judicial district.  Further, as described below, Hospital submitted

Original Complaint
*Galen Hospital Alaska Inc. dba Alaska Regional Hospital v. PremeraFirst, Inc. et al.,*
Case No. _____
Page 3 of 27

Case 3:25-cv-00197-SLG      Document 1      Filed 09/10/25      Page 3 of 27

claims for reimbursement to Premera in this judicial district. Thus, a substantial part of Hospital's claims – the provision of care to Premera members and the submission of Hospital's claims for payment – took place in this judicial district, making venue proper under 28 U.S.C § 1391(b)(2).

## THE PARTIES' FACILITY AGREEMENT

9.      Hospital and Premera are parties to a Facility Agreement, effective December 15, 2016, as amended periodically (the "Facility Agreement"). All parties to this action are in possession of the Facility Agreement.

10.     The Facility Agreement memorializes the parties' respective rights and obligations with respect to the provision of healthcare services by Hospital to Premera members. Under the Facility Agreement, Hospital agreed to render Medically Necessary healthcare services to Premera members. In exchange, Premera agreed to reimburse Hospital for those services at specific rates outlined in the Agreement.

11.     The Facility Agreement contains the following key provisions relevant to this dispute:

a.  The Facility Agreement obligates both parties to "actively participate" in discharge planning for Premera members. This collaborative process ensures continuity of care and helps avoid unnecessary delays in transferring patients to appropriate care settings.

Original Complaint
*Galen Hospital Alaska Inc. dba Alaska Regional Hospital v. PremeraFirst, Inc. et al.,*
Case No. _____
Page 4 of 27

Case 3:25-cv-00197-SLG      Document 1      Filed 09/10/25      Page 4 of 27

b.  The Facility Agreement requires Hospital to submit claims for
    reimbursement to Premera within 365 calendar days following the date of
    discharge for inpatient services or the date of service for all other services.

c.  The Facility Agreement prohibits Premera from denying payment for
    services that have already been authorized.

d.  The Facility Agreement prevents Premera from altering reimbursement
    rates or payment amounts unilaterally unless Hospital provides written
    consent.

e.  The Facility Agreement requires Hospital to seek an adjustment or
    additional payment for a claim within 365 days of the "final adjudication"
    of the claim.

f.  Finally, the Facility Agreement requires Premera to conduct onsite billing
    audits twice per year but imposes strict limitations on these audits,
    including a cap of 100 patient records annually.

## PREMERA'S FAILURE TO PAY HOSPITAL FOR MEDICALLY NECESSARY SERVICES

12.    This action involves eight claims for Medically Necessary services provided
by Hospital to Premera members under Facility Agreement for which Premera failed to
pay the amounts contractually owed (the "Disputed Claims").

13.    Hospital has provided Premera with a detailed list of the Disputed Claims,
along with all necessary information to identify the patients and services that Hospital

Original Complaint
*Galen Hospital Alaska Inc. dba Alaska Regional Hospital v. PremeraFirst, Inc. et al.,*
Case No. _____
Page 5 of 27

Case 3:25-cv-00197-SLG     Document 1     Filed 09/10/25     Page 5 of 27

believes were underpaid under the terms of the Facility Agreement. Premera is already in possession of the relevant records associated with these Disputed Claims, including but not limited to billing and payment records, correspondence between the parties, medical records, and documentation related to appeals and dispute resolution. To protect the privacy of the patients involved, the identities of the members associated with the Disputed Claims are anonymized in this complaint to avoid disclosing personally identifiable health information.

*Patient 1 (Admit January 16, 2022, Discharge February 8, 2022)*

14.     Patient 1 was admitted to the ICU through the emergency room after suffering a stroke. Physicians ordered that Patient 1 be transferred to an inpatient rehabilitation facility (IRF) to continue recovery and confirmed IRF coverage through Premera. Before the patient was medically cleared for transfer to a rehabilitation facility, they tested positive for COVID-19 and were required to isolate for 10 days under CDC recommendations and Hospital policy. During this isolation period, intensive physical therapy sessions continued, and hospital staff worked to find a rehabilitation facility that would accept the patient.

15.     After the isolation period ended, Hospital case management had identified an IRF that would accept the patient and take Premera insurance the following day. Despite this availability, Premera had not yet authorized the transfer to the accepting IRF.

Original Complaint
*Galen Hospital Alaska Inc. dba Alaska Regional Hospital v. PremeraFirst, Inc. et al.,*
Case No. _____
Page 6 of 27

Case 3:25-cv-00197-SLG     Document 1     Filed 09/10/25     Page 6 of 27

16.     The next day, Premera denied the transfer, stating that inpatient rehabilitation was not Medically Necessary for Patient 1. A peer-to-peer review was conducted shortly afterward, but Premera refused to reverse the denial.

17.     Over the next several days, the treating physician increased the patient's physical and occupational therapy sessions to prepare for discharge with home health services (HHS) or to a skilled nursing facility (SNF). Hospital's case management team searched for an accepting SNF with an available bed, but none were available. On or around February 8, Patient 1 became medically cleared for discharge with 24-hour care at home and outpatient rehabilitation services. Patient 1 was discharged later that day.

18.     Hospital timely billed the claim for Patient 1's services to Premera on February 21, 2022. On April 28, 2022, Premera adjudicated the claim and denied payment for dates of service January 26, 2022 to February 8, 2022 due to an alleged lack of Medical Necessity.

19.     On May 3, 2022, Hospital submitted a first-level appeal, which was resubmitted on June 3, 2022, and a second-level appeal on August 18, 2022, resubmitted on September 13, 2022, to contest Premera's payment decision. However, Premera upheld its denial in response to both appeals. Premera improperly denied the second-level appeal as untimely, despite it being submitted within 30 days of Hospital's receipt of Premera's appeal decision. Premera erroneously mailed the decision to an address other than the Hospital's designated mailing address.

Original Complaint
*Galen Hospital Alaska Inc. dba Alaska Regional Hospital v. PremeraFirst, Inc. et al.,*
Case No. _____
Page 7 of 27

Case 3:25-cv-00197-SLG     Document 1     Filed 09/10/25     Page 7 of 27

20.    Hospital sent Premera a notice of dispute, dated October 14, 2024, requesting additional payment on the claim. Premera failed to respond.

21.    ARH provided Medically Necessary services on the denied dates of service, for which the principal amount of $54,923.30 is owed under the Facility Agreement. To date, Premera has failed to pay this amount for the Medically Necessary services provided to Patient 1.

22.    *Patient 2 (Admit November 21, 2022, Discharge January 10, 2023)*

23.    Patient 2 was admitted to the hospital through the emergency room with end-stage lung cancer that had spread to the brain, liver, adrenal gland, and spinal cord. Patient 2 required acute inpatient care and inpatient radiation treatment, which was completed as planned. After the radiation treatment, Patient 2 developed urinary blockages that required catheter flushing every nursing shift. Hospital case management searched to find placement for the patient in a lower level of care because discharging Patient 2 to their home was not possible because their family was unable to provide the 24-hour care needed. Patient 2 could not afford options such as personal care assistance, assisted living, or long-term care unless Premera covered these costs.

24.    Between December 9, 2022, and Patient 2's expiration on January 10, 2023, Hospital case management was unable to find a SNF or hospice-licensed facility that had availability and would accept Patient 2.

25.    Premera authorized the patient's care through December 9, 2022. However, on December 15, Premera denied authorization for all services provided after December 9,

Original Complaint
*Galen Hospital Alaska Inc. dba Alaska Regional Hospital v. PremeraFirst, Inc. et al.,*
Case No. _____
Page 8 of 27

Case 3:25-cv-00197-SLG    Document 1    Filed 09/10/25    Page 8 of 27

stating the care was not Medically Necessary. On December 16, Hospital requested a peer-to-peer review, but Premera refused to participate.

26.     Hospital timely billed the claim for Patient 2's services on February 19, 2023, and a corrected claim was billed on February 24, 2023. On May 10, 2023, Premera adjudicated the claim and denied payment for dates of service December 9, 2022 to January 10, 2023 due to an alleged lack of Medical Necessity.

27.     On May 23, 2023, Hospital submitted a first-level appeal and a second-level appeal on July 13, 2023, which was resubmitted August 7, 2023, to contest Premera's payment decision. However, Premera upheld its denial in response to both appeals. Premera improperly denied the second-level appeal as untimely, despite Hospital having submitted it within 30 days of Premera's June 16 appeal decision.

28.     Hospital sent Premera a notice of dispute, dated February 26, 2025, requesting additional payment on the claim. Premera failed to respond.

29.     Hospital provided Medically Necessary services on the denied dates of service, for which the principal amount of $159,743.77 is owed under the Facility Agreement. To date, Premera has failed to pay this amount for the Medically Necessary services provided to Patient 2.

*Patient 3 (Admit October 19, 2023, Discharge December 14, 2023)*

30.     Patient 3 was transferred from another facility to the Hospital by air medic and admitted through the emergency room after developing sepsis caused by an obstructive kidney stone. The patient experienced severe abdominal pain, nausea, and septic shock,

Original Complaint
*Galen Hospital Alaska Inc. dba Alaska Regional Hospital v. PremeraFirst, Inc. et al.,*
Case No. _____
Page 9 of 27

Case 3:25-cv-00197-SLG     Document 1     Filed 09/10/25     Page 9 of 27

requiring admission to the ICU. Because the patient was immobile, discharge to their home was not an option. Hospital case management searched for an accepting facility, but placement was difficult because facilities either lacked available beds or were unable to accept the patient due to their need for a higher level of care.

31.     When a SNF with an available bed was finally identified on or around December 14, Patient 3 was approved for placement at the SNF and promptly discharged.

32.     Hospital timely billed the claim for Patient 3's services to Premera on December 18, 2023. On June 19, 2024, Premera adjudicated the claim and denied payment for dates of service November 6, 2023 to December 14, 2023 for an alleged lack of Medical Necessity.

33.     On July 3, 2024, Hospital submitted a first-level appeal, resubmitted August 7, 2024, and September 4, 2024, and a second-level appeal on October 1, 2024. However, Premera upheld its denial in response to the first-level appeal and failed to respond to the second-level appeal.

34.     Hospital sent Premera a notice of dispute, dated December 4, 2024, requesting additional payment on the claim. Premera failed to respond.

35.     Hospital provided Medically Necessary services on the denied dates of service, for which the principal amount of $109,022.73 is owed under the Facility Agreement. To date, Premera has failed to pay this amount for the Medically Necessary services provided to Patient 3.

*Patient 4 (Admit March 12, 2022, Discharge March 28, 2022)*

Original Complaint
*Galen Hospital Alaska Inc. dba Alaska Regional Hospital v. PremeraFirst, Inc. et al.,*
Case No. _____
Page 10 of 27

Case 3:25-cv-00197-SLG     Document 1     Filed 09/10/25     Page 10 of 27

36.     Patient 4 was admitted to the hospital through the emergency room after experiencing a second episode of diverticulitis with complications, including painful abscesses. During the hospital stay, a drain was placed to treat the abscesses. Several days later, a follow-up CT scan showed that the abscesses had mostly resolved. However, the scan suggested the possibility of a fistula, which required a consultation with an infectious disease physician. As a result, Patient 4 was placed on a multi-week treatment plan of intravenous (IV) antibiotics, with a follow-up abdominal scan scheduled after the therapy was completed.

37.     On March 22, Hospital's case management team spoke with Patient 4's primary care physician, who was not comfortable overseeing the patient's outpatient IV antibiotic treatment. A PICC line was inserted the following day to administer the antibiotics. On March 24, case management contacted another physician willing to supervise Patient 4's outpatient IV therapy, but could not see the patient until the following week. Seeking quicker care, Hospital case management found another physician who could see Patient 4 within the same week. The home infusion services were ordered, and delivery and orientation for outpatient IV antibiotic therapy was scheduled. On March 28, 2022, Patient 4 was discharged home with physician instructions to proceed with the outpatient care plan.

38.     Hospital timely billed the claim to Premera for Patient 4's services on April 1, 2022, and a corrected claim was submitted on April 19, 2022. On June 16, 2022 Premera

Original Complaint
*Galen Hospital Alaska Inc. dba Alaska Regional Hospital v. PremeraFirst, Inc. et al.,*
Case No. _____
Page 11 of 27

Case 3:25-cv-00197-SLG     Document 1     Filed 09/10/25     Page 11 of 27

adjudicated the claim and denied payment for dates of service March 22, 2022 to March 28, 2022 for an alleged lack of Medical Necessity.

39.     On June 29, 2022, the claim was split billed with approved and denied dates of service separated in lieu of a first-level appeal. Hospital thereafter submitted additional levels of appeal, including on December 9, 2022 and April 25, 2023. However, Premera upheld its denial in all instances.

40.     Hospital sent Premera a notice of dispute, dated April 30, 2025, requesting additional payment on the claim. Premera failed to respond.

41.     Hospital provided Medically Necessary services on the denied dates of service, for which the principal amount of $34,159.84 is owed under the Facility Agreement. To date, Premera has failed to pay this amount for the Medically Necessary services provided to Patient 4.

### *Patient 5 (Admit May 19, 2023, Discharge May 20, 2023)*

42.     Patient 5 was admitted to the Hospital for a scheduled spinal fusion surgery on May 19, 2023. The surgery performed on Patient 5 was a lumbar fusion with the placement of a structural graft, plating of the spine, and required neurological monitoring. The next day, Patient 5 was medically cleared and discharged home by physician order.

43.     The physician ordered inpatient care for both before and after Patient 5's spine surgery. However, Premera authorized the lumbar fusion as an outpatient procedure under code CPT 22558 on April 4, 2023. After the hospital submitted the required notice of inpatient admission to Premera on May 21, 2023, Premera denied the inpatient

Original Complaint
*Galen Hospital Alaska Inc. dba Alaska Regional Hospital v. PremeraFirst, Inc. et al.,*
Case No. _____
Page 12 of 27

Case 3:25-cv-00197-SLG     Document 1     Filed 09/10/25     Page 12 of 27

authorization request as untimely. Premera did not offer a retroactive authorization or allow a peer-to-peer review of the decision.

44.     On May 26, 2023, Hospital billed the claim for Patient 5's inpatient hospital services to Premera. under hospital procedure code 0SG00A0, which corresponds to CPT 22558 which is the code that was authorized. On July 13, 2023, Premera denied the entire claim, issuing no payment, citing a purported lack of Medical Necessity.

45.     On July 26, 2023, Hospital submitted a first-level appeal and a second-level appeal on October 2, 2023 to contest Premera's payment decision. Premera upheld its denial in response to both appeals.

46.     Hospital sent Premera a notice of dispute, dated April 30, 2025, requesting additional payment on the claim. Premera failed to respond.

47.     Hospital provided Medically Necessary services on the denied dates of service, for which the principal amount of $124,474.87 is owed under the Facility Agreement. To date, Premera has failed to pay this amount for the Medically Necessary services provided to Patient 5.

*Patient 6 (Admit June 24, 2022, Discharge July 26, 2022)*

48.     Patient 6 presented to the Hospital emergency room after being found on the floor, experiencing increasing weakness, extreme fatigue, and an inability to walk. Upon arrival at the Hospital, Patient 6 tested positive for COVID-19 and was initially admitted for observation. Patient 6 declined to speak with a psychiatry team and was determined to have limited ability to make medical decisions. On June 26, the patient was formally

Original Complaint
*Galen Hospital Alaska Inc. dba Alaska Regional Hospital v. PremeraFirst, Inc. et al.,*
Case No. _____
Page 13 of 27

Case 3:25-cv-00197-SLG     Document 1     Filed 09/10/25     Page 13 of 27

admitted as an inpatient by physician order due to severe hypothyroidism. Later, on June 30, blood test results showed that Patient 6 had a staph epidermis infection, raising concerns about potential sepsis and leading to further medical evaluation.

49.     Planning for Patient 6's discharge began upon their initial admission. On July 12, social work was brought in to help obtain power of attorney paperwork from the patient 6's spouse. By July 13, the Hospital intended to discharge Patient 6 to home hospice care, pending the patient's spouse agreeing to the plan. On July 14, social work met with the patient's spouse to finalize discharge plans, including home hospice care. Thereafter, case management attempted to place the patient into hospice care, but Premera's preferred hospice providers decided the patient was not eligible. Ultimately, Patient 6 was discharged to home under physician orders on July 26 requiring follow up with their primary care physician.

50.     Hospital timely billed the claim to Premera for Patient 6's services on August 3, 2022. On June 6, 2023, Premera adjudicated the claim and denied payment for dates of service July 15, 2022 to July 26, 2022 for an alleged lack of Medical Necessity.

51.     On July 11, 2023, Hospital submitted a first-level appeal, resubmitted September 1, 2023, and a second-level appeal on October 2, 2023 to contest Premera's payment decision. Premera upheld its denial in response to both appeals.

52.     Hospital sent Premera a notice of dispute, dated April 30, 2025, requesting additional payment on the claim. Premera failed to respond.

Original Complaint
*Galen Hospital Alaska Inc. dba Alaska Regional Hospital v. PremeraFirst, Inc. et al.,*
Case No. _____
Page 14 of 27

Case 3:25-cv-00197-SLG     Document 1     Filed 09/10/25     Page 14 of 27

53.     Hospital is only contesting Premera's denial with respect to dates of service July 15, 2022 to July 22, 2022. On these dates, Hospital provided Medically Necessary services for which the principal amount of $28,021.19 is owed under the Facility Agreement. To date, Premera has failed to pay this amount for the Medically Necessary services provided to Patient 6.

*Patient 7 (Admit August 28, 2023, Discharge September 18, 2023)*

54.     Patient 7 had previously received a total hip replacement approximately four and a half months earlier. Following the hip replacement, the patient began experiencing worsening pain, redness, fluid leakage from the front of the hip, and difficulty healing the surgical wound. On August 26, 2023, Patient 7 returned to the Hospital and reported new symptoms, including shaking and chills. A CT scan identified a large fluid buildup in the hip, and lab results showed an extremely low white blood cell count. On August 28, Patient 7 underwent the scheduled irrigation and debridement procedure, and afterward, they were admitted as an inpatient by physician order.

55.     The next day, once tests confirmed the infection in the prosthetic joint was resolved, Patient 7 underwent a revision surgery to replace the prosthetic hip components, which involved removing the temporary cement spacer and inserting new hip implant. Blood cultures from the surgery showed the presence of a bacterial infection (strep agalactiae), and Infectious Disease recommended a six-week course of IV antibiotics administered through a Hickman catheter, along with weekly lab tests. Discharge planning began for transfer to a SNF for rehabilitation and ongoing IV treatments. While an

Original Complaint
*Galen Hospital Alaska Inc. dba Alaska Regional Hospital v. PremeraFirst, Inc. et al.,*
Case No. _____
Page 15 of 27

Case 3:25-cv-00197-SLG     Document 1     Filed 09/10/25     Page 15 of 27

inpatient, Patient 7 received treatment for acute kidney injury, blood loss anemia, and morbid obesity. Patient 7's pain was managed with a combination of oral opioids, IV opioids, muscle relaxers, and anti-inflammatory medications, and physical therapy.

56.     Case management actively worked to find placement for Patient 7 at a SNF starting September 1, 2023. Referrals were sent to several facilities, and on September 5, one facility confirmed they could accept the patient, but the placement required Premera's authorization for approval. Premera delayed the authorization until September 18 - nearly two weeks. On that day, Patient 7 was discharged to the SNF under physician order.

57.     Hospital timely billed a claim to Premera for Patient 7's services on September 24, 2023. On February 7, 2024, Premera adjudicated the claim and denied payment for dates of service September 12, 2023 to September 28, 2023 for an alleged lack of Medical Necessity.

58.     On April 9, 2024, ARH submitted a first-level appeal and a second-level appeal on September 18, 2024 to contest Premera's payment decision. However, Premera upheld its denial as to the first-level appeal and did not respond to the second-level appeal.

59.     Hospital sent Premera a notice of dispute, dated April 30, 2025, requesting additional payment on the claim. Premera denied issuance of additional payment.

60.     Hospital provided Medically Necessary services on the denied dates of service, for which payment of $41,811.46 is owed under the Facility Agreement. To date, Premera has failed to pay this amount for the Medically Necessary services provided to Patient 7.

Original Complaint
*Galen Hospital Alaska Inc. dba Alaska Regional Hospital v. PremeraFirst, Inc. et al.,*
Case No. _____
Page 16 of 27

Case 3:25-cv-00197-SLG     Document 1     Filed 09/10/25     Page 16 of 27

61.    Patient 8 had previously undergone a total knee replacement on their left knee, followed by multiple procedures to clean out infections. Ultimately, the patient had an above-the-knee amputation due to complications. An MRI later revealed an infection in the remaining femur bone and a recurrent abscess in the stump of the left amputation site. As a result, surgery was recommended, and on February 12, 2024, Patient 8 was admitted to the hospital for a planned surgical procedure by physician order. The surgery included revising the above knee amputation, removing infected and abnormal tissue from the left leg, removing excess bone growth in the left thigh, cutting away a draining sinus, and treating the femoral osteomyelitis. After the procedure, the patient was moved to a hospital floor in stable condition and started on IV antibiotics to treat the infection. On February 15, the patient returned to the operating room for further cleaning of the left knee amputation site. During this procedure, cultures showed an MRSA infection, and Infectious Disease recommended a six-week course of IV antibiotics for treatment. Discharge planning to a SNF was initiated so the patient could receive ongoing IV antibiotic therapy.

62.    Case management began working on SNF placement for Patient 8 on February 16, sending referrals to multiple facilities. On February 20, case management contacted a SNF about admitting the patient. However, on February 23, the SNF still had not received authorization from Premera for the discharge. That day, case management was contacted by Premera requesting a callback for a peer-to-peer review regarding the Patient 8's transfer to the SNF. Patient 8's treating physician discussed Patient 8 with Premera's

physician, and approved the transfer to the SNF. On February 27, Premera informed Hospital case management that a SNF physician would need to conduct another peer-to-peer review with Premera. Case management continued checking from March 1 to March 6, but Premera never scheduled the peer-to-peer review with the SNF physician.

63. After the treating physician determined that Patient 8 was medically cleared to discharge to home with HHS to complete the IV antibiotic therapy. Patient 8 was discharged per physician order on March 11, 2024.

64. Hospital timely billed the claim to Premera for Patient 8's services on March 21, 2024. On July 24, 2024, Premera adjudicated the claim and denied payment for dates of service February 29, 2024 to March 11, 2024 for an alleged lack of Medical Necessity.

65. On August 31, 2024, Hospital submitted a first-level appeal and a second-level appeal on November 21, 2024 to contest Premera's payment decision. However, Premera upheld its denial in response to both appeals. Premera improperly denied the second-level appeal as untimely, despite it being submitted within 30 days of Premera's payment decision communicated via explanation of benefits dated October 31, 2024.

66. Hospital sent Premera a notice of dispute, dated April 22, 2025, requesting additional payment on the claim. Premera failed to respond.

67. Hospital provided Medically Necessary services on the denied dates of service, for which the principal amount of $52,539.59 is owed under the Facility Agreement. To date, Premera has failed to pay this amount for the Medically Necessary services to provided to Patient 8.

Original Complaint
*Galen Hospital Alaska Inc. dba Alaska Regional Hospital v. PremeraFirst, Inc. et al.,*
Case No. _____
Page 18 of 27

Case 3:25-cv-00197-SLG    Document 1    Filed 09/10/25    Page 18 of 27

68.    For each of the Disputed Claims, and in accordance with its obligations under the Facility Agreement, Hospital provided healthcare services that were Medically Necessary, and Hospital timely billed Premera for such services in accordance with the requirements of the Facility Agreement.

69.    Instead of paying the agreed-upon rates for the services as required by the Facility Agreement, however, Premera underpaid the Disputed Claims by denying the healthcare services as not Medically Necessary.

70.    As a result of Premera's failure to pay Hospital the amounts owed on the Disputed Claims under the Facility Agreement for Medically Necessary services, Hospital has been damaged in an amount to be determined at trial.

## PREMERA'S FAILURE TO ACTIVELY PARTICIPATE IN DISCHARGE PLANNING FOR THE DISPUTED CLAIMS

71.    Premera likewise failed to actively participate in discharge planning for its members in violation of the Facility Agreement.

72.    As one example, Patient 7 was accepted to a SNF on September 5, 2023, but Premera did not authorize this lower level of care until September 18, 2023.

73.    Had Premera provided timely authorization for the SNF transfer, Patient 7 could have been discharged within the service dates Premera had authorized and agreed to pay.

Original Complaint
*Galen Hospital Alaska Inc. dba Alaska Regional Hospital v. PremeraFirst, Inc. et al.,*
Case No. _____
Page 19 of 27

Case 3:25-cv-00197-SLG    Document 1    Filed 09/10/25    Page 19 of 27

74.     Despite contributing to the duration of Patient 7's hospitalization, Premera continues to deny payment for these dates of services, citing an alleged lack of Medical Necessity.

75.     By failing to timely respond to the request for authorization for transfer to a SNF, Premera failed to actively participate in discharge planning for its member and instead acted as a barrier to timely transfer.

76.     As a result of Premera's breach of its obligation to actively participate in discharge planning for its members, Hospital has been damaged in an amount to be determined at trial.

## PREMERA'S IMPROPER PRE-PAYMENT AUDITS

77.     In addition to the improper Medical Necessity denials, Premera has also underpaid certain Disputed Claims by denying payment for certain charges on Hospital's bills, notwithstanding the fact that such charges are required to be paid under the Facility Agreement.

78.     Specifically, Premera performed, or caused to be performed, a prepayment audit of Hospital's bills that was designed and intended to unlawfully reduce Premera's payment obligations under the Facility Agreement.

79.     Premera's pre-payment audits violated the Facility Agreement in multiple ways.

80.     First, Premera's audits of the Disputed Claims did not conform with the requirements of Section 5.02 of the Facility Agreement, which provides detailed

Original Complaint
*Galen Hospital Alaska Inc. dba Alaska Regional Hospital v. PremeraFirst, Inc. et al.,*
Case No. _____
Page 20 of 27

Case 3:25-cv-00197-SLG     Document 1     Filed 09/10/25     Page 20 of 27

processes for conducting an audit and/or reducing payment on any claim submitted by Hospital. Premera has failed to follow these mandatory processes with respect to the Disputed Claims.

81.     Second, Premera engaged a third-party vendor, CERIS, to conduct its improper pre-payment audits using proprietary software programs that relied on pre-programmed algorithms and matrices to automatically deny payment for certain, specified services and supplies without regard to the specific requirements of the Facility Agreement or the unique and individualized clinical facts of each Disputed Claim.

82.     Third, this audit software applied billing and coding standards that were different and more stringent that those recognized as the standards in the industry and, indeed, were contrary to the billing standards by the Centers for Medicare & Medicaid Services ("CMS"), as well as AMA, CPT, HCPCS, ICD9/10 and other applicable coding guidelines. Because these standards, which were unilaterally adopted and applied by Premera, are both unreasonable and contrary to well-accepted standards in the industry, they operate to reduce ARH's reimbursement and to increase its administrative costs. As such, they violate the requirements of the Facility Agreement.

83.     For each of the Disputed Claims for which an improper pre-payment audit was performed, Premera paid some, but not all, of the amounts due under the Facility Agreement, indicating that Premera did not and does not dispute that it is financially responsible for paying for the medical services at issue.

Original Complaint
*Galen Hospital Alaska Inc. dba Alaska Regional Hospital v. PremeraFirst, Inc. et al.,*
Case No. _____
Page 21 of 27

Case 3:25-cv-00197-SLG     Document 1     Filed 09/10/25     Page 21 of 27

84.     Upon receiving these improperly low payment amounts, Hospital appealed Premera's payments in accordance with the terms of the Facility Agreement, and in some cases appealed again after Premera continued to refuse to correct its improper underpayments. Premera did not correct its improper payments after Hospital's appeals.

85.     Hospital continued to attempt to resolve the Disputed Claims, including by sending demand letters and correspondence to Premera management or other personnel. These attempts have also proved fruitless

86.     As a result of Premera's failure to pay Hospital the amounts owed on the Disputed Claims under the Facility Agreement as a result of its improper pre-payment audits, Hospital has been damaged in an amount to be determined at trial.

## HOSPITAL'S COMPLIANCE WITH PRE-FILING REQUIREMENTS

87.     Despite Hospital's repeated efforts to resolve the Disputed Claims, Premera has refused to pay those claims in accordance with the Facility Agreement.

88.     For each Disputed Claim, Hospital submitted two or more appeals seeking adjustments and/or additional payment within 365 days of Premera's initial denial. Those appeals included detailed explanations of the medical necessity of services provided by advanced practice registered nurses and copies of the patients' medical records, but Premera nonetheless declined to alter its payment determinations or remit the outstanding principal.

Original Complaint
*Galen Hospital Alaska Inc. dba Alaska Regional Hospital v. PremeraFirst, Inc. et al.,*
Case No. _____
Page 22 of 27

Case 3:25-cv-00197-SLG     Document 1     Filed 09/10/25     Page 22 of 27

89.     In multiple instances, Premera improperly rejected Hospital's appeals as untimely even though the appeals were timely, or Premera's own actions contributed to delays in Hospital's submission of appeals.

90.     Premera repeatedly informed Hospital that it was unable to locate Hospital's appeals, even though they had been submitted through standard business channels. This forced Hospital to re-submit the same appeals multiple times. Premera then denied the re-submitted appeals as untimely.

91.     Hospital served notices of dispute under Section 8.01 of the Facility Agreement, which requires the parties to engage in informal, good-faith discussions before initiating dispute resolution. Premera repeatedly ignored those notices and refused to participate in the contractually required informal discussions.

92.     With no other practicable remedy, Hospital filed an arbitration demand with the AHLA on April 14, 2025. Premera declined to consent to that forum and instead insisted on mediation.

93.     The parties participated in mediation on July 11, 2025 with respect to the Disputed Claims, but the mediation did not resolve the dispute.

94.     Accordingly, Hospital has satisfied all prerequisites to initiating this action under the Facility Agreement. To the extent any prerequisite has not been strictly met, Hospital pleads that equitable principles under Alaska law warrant relief from forfeiture as Hospital has provided Medically Necessity healthcare services to Premera members on

Original Complaint
*Galen Hospital Alaska Inc. dba Alaska Regional Hospital v. PremeraFirst, Inc. et al.,*
Case No. _____
Page 23 of 27

Case 3:25-cv-00197-SLG     Document 1     Filed 09/10/25     Page 23 of 27

Premera's behalf without receiving appropriate compensation under the Facility Agreement.

## FIRST CAUSE OF ACTION

### (Breach of Contract)

95.     Hospital repeats and re-alleges the allegations contained in the foregoing paragraphs as if set forth fully herein.

96.     The Facility Agreement is a valid and enforceable contract.

97.     Hospital performed its obligations under the terms of the Facility Agreement, including providing Medically Necessary healthcare services to each of the patients involved in the Disputed Claims, except to the extent Premera's actions frustrated or excused Hospital's performance.

98.     Through its actions alleged above, Premera breached the Facility Agreement with respect to the Disputed Claims, including but not limited to:

   a. Improperly denying payment for Medically Necessary services provided to Premera members in contravention of the payment terms of the Facility Agreement;

   b. Failing to actively participate in discharge planning for Premera members, thereby prolonging the duration of their hospitalization;

   c. Performing unauthorized pre-payment audits in contravention of the audit provisions of the Facility Agreement and pursuant to which Premera has unilaterally adjusted payment to less than what is contractually owed; and

Original Complaint
*Galen Hospital Alaska Inc. dba Alaska Regional Hospital v. PremeraFirst, Inc. et al.,*
Case No. _____
Page 24 of 27

Case 3:25-cv-00197-SLG     Document 1     Filed 09/10/25     Page 24 of 27

d. Failing to engage in the dispute resolution processes under the Facility Agreement, including by failing to respond to Hospital's requests to commence informal good faith discussions, as required.

99. As a direct and proximate result of Premera's breaches of the Facility Agreement, Hospital has suffered damages in an amount to be determined at trial, but no less than $672,000.

## SECOND CAUSE OF ACTION

### (Breach of Implied Covenant of Good Faith and Fair Dealing)

100. Hospital repeats and re-alleges the allegations contained in the foregoing paragraphs as if set forth fully herein.

101. The law implies in every contract a covenant of good faith and fair dealing, which requires that neither party do anything which will deprive the other of the benefit of the agreement.

102. Despite the existence of the Facility Agreement whereby Premera agreed to compensate Hospital for Medically Necessary services provided to Premera members, Premera continues to withhold amounts rightfully due to Hospital. As alleged above, Premera's actions with respect to the Disputed Claims, including but not limited Premera's failure to appropriately process and track Hospital's appeals, failure to consider the merits of Hospital's appeals, and failure to engage in informal good faith discussions, have deprived Hospital of the benefit of the parties' agreement.

Original Complaint
*Galen Hospital Alaska Inc. dba Alaska Regional Hospital v. PremeraFirst, Inc. et al.,*
Case No. _____
Page 25 of 27

Case 3:25-cv-00197-SLG    Document 1    Filed 09/10/25    Page 25 of 27

103.    Premera's withholding of amounts rightfully due to Hospital is patently unreasonable, and is intended to frustrate and deprive Hospital of the benefit of its agreement.

104.    Premera's actions as alleged above breached the implied covenant of good faith and fair dealing in connection with the Facility Agreement.

105.    As a direct and proximate result of Premera's breaches of the implied covenant of good faith and fair dealing, Hospital has suffered damages in an amount to be determined at trial.

## THIRD CAUSE OF ACTION

### (Unjust Enrichment)

106.    Hospital repeats and re-alleges the allegations contained in the foregoing paragraphs as if set forth fully herein.

107.    Hospital pleads this cause of action in the alternative.

108.    Premera has a duty to its members to either pay or arrange payment for Medically Necessary healthcare services that those members receive from Hospital.

109.    Hospital conferred a benefit upon Premera by providing the Medically Necessary healthcare services at issue in the Disputed Claims.

110.    Premera has failed and refused to pay Hospital, in whole or in part, for this benefit.

111.    It would be unjust to allow Premera to retain this benefit without compensation.

Original Complaint
*Galen Hospital Alaska Inc. dba Alaska Regional Hospital v. PremeraFirst, Inc. et al.,*
Case No. _____
Page 26 of 27

Case 3:25-cv-00197-SLG    Document 1    Filed 09/10/25    Page 26 of 27

112.    Hospital therefore seeks payment for the reasonable value of such benefit, which amount shall be determined at trial.

## **PRAYER FOR RELIEF**

113.    Wherefore, Hospital prays for the following relief:

a.  For damages according to proof at trial in an amount no less than $672,000;

b.  For restitution of all sums unjustly retained by Premera;

c.  For its attorneys' fees and costs in having to bring this action pursuant to Alaska law; and

d.  For such other and further legal and equitable relief as the Court deems just and proper.

DATED this 10th day of September, 2025 at Anchorage, Alaska.

DAVIS WRIGHT TREMAINE LLP
Attorneys for Plaintiff Galen Hospital Alaska, Inc.
dba Alaska Regional Hospital


By:  _/s/ Elizabeth P. Hodes_____
Elizabeth P. Hodes, AK Bar No. 0511108
Leslie C. Murphy (To Be Admitted *Pro Hac Vice*)
Elizabeth K. Key (To Be Admitted *Pro Hac Vice*)
Mark A. Anishchenko (To Be Admitted *Pro Hac Vice*)

Original Complaint
*Galen Hospital Alaska Inc. dba Alaska Regional Hospital v. PremeraFirst, Inc. et al.,*
Case No. _____
Page 27 of 27

Case 3:25-cv-00197-SLG    Document 1    Filed 09/10/25    Page 27 of 27